FILED

08 MAR 11 PM 3:41

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

1   Raymond Robinson

2   4562 Illinois St.

3   San Diego, CA 92116

4   (619) 283-3121

5   xray.1@cox.net

6   In pro per

7

8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  RAYMOND ROBINSON,              ) Case No.: '08 CV 0244 DMS BLM
                                   )
12              Plaintiff,          ) **PLAINTIFF'S OPPOSITION TO**
                                   ) **DEFENDANT JUDGE RUBIN'S NOTICE**
13       vs.                        ) **OF MOTION TO DISMISS THE**
                                   ) **COMPLAINT WITH PREJUDICE,**
14  DAVID RUBIN and BRIAN CORNELL,  ) **MEMORANDUM OF POINTS AND**
                                   ) **AUTHORITIES IN SUPPORT**
15              Defendants.         )
                                   )
16                                  ) April 1, 2008 10:30 a.m.
                                   ) Courtroom 7, 3rd Fl.
17                                  ) Hon. Thomas J. Whalen, Judge
                                   )
18  _____)

19  Plaintiff opposes this motion on the following grounds:

20      (1) Defendant's legal arguments are based on a multitude of misleading statements;

21  (2) Defendant's legal citations are relevant only to such misleading statements or to

22  nothing at all; (3) Plaintiff's Complaint clearly states a section 1983 cause of action.

23  Dated: 3-11-08                          _Ray Robinson_

24                                          Raymond Robinson, in pro per

25

1  Note: Defendant's motion requests judicial notice of certain evidentiary documents pertaining to the

2  underlying action. Plaintiff has no objection. Accordingly, Plaintiff may need to utilize such evidence

3  where necessary to counter any misleading statements offered by the defense.

4  ## MEMORANDUM OF POINTS AND AUTHORITIES

5  ## IN SUPPORT OF OPPOSITION

6  I

7  Defendant's argument for lack of jurisdiction of the

8  subject matter fails for lack of relevance.

9  Defendant cites FRCP 12(b)(1) as a basis for granting this motion, arguing not only

10  sovereign immunity but *Rooker-Feldman* doctrine as well.

11  Looking to Defendant's sovereign immunity argument, a 3-1/2 page barrage of

12  legal citations beginning on p. 6 of Defendant's P's & A's (1/) and identified as

13  argument "C", defendant fails to acknowledge that Plaintiff's complaint is brought

14  against Defendant Rubin in an "individual" capacity [Complaint, paragraph 17].

15  In order to determine whether a section 1983 defendant has been sued in

16  defendant's individual capacity or official capacity, a court looks to the

17  complaint [*Riebsame v. Prince*, 267 F.Supp.2d 1225, 1236 (M.D.Fla.

18  2003)].

19  Defendant's own argument reveals that sovereign immunity applies only to

20  governments and government officials sued in their official capacities. That

21  Defendant happens to be employed by a government is irrelevant.

22  State employees in their individual capacities may be liable under section

23  1983, even when the conduct in question is related to their official duties

24  _____

25  1/  P's & A's refers to the Points and Authorities section of Defendant's moving papers.

1   [*Morris v. Eversley*, 282 F.Supp.2d 196, 202 (S.D.N.Y. 2003)].

2   Defendant's sovereign immunity argument is not relevant.

3   Looking to the *Rooker-Feldman* doctrine argument beginning on p. 9 of

4   Defendant's P's & A's and identified as argument "D", Defendant fails to

5   acknowledge that the adjudication of the instant action for a civil rights violation

6   [Complaint, p. 2, lines 6-7], can have no effect upon plaintiff's conviction in the

7   underlying state-court action for a traffic infraction [Exh. A, p. 9, lines 9-11]. 2/

8   The two are related only insofar as the alleged civil rights violation

9   occurred in the midst of the proceedings of the underlying case, said case

10   having since been dismissed following appeal [Exh. B]. 3/

11   Nowhere in Plaintiff's Complaint can it be said that Plaintiff is attempting to

12   re-litigate a dismissed traffic ticket.

13   Defendant's *Lance v. Dennis* argument [Motion P's & A's p. 10, lines 12-

14   18] is misleading, in that the requirement "(2)" as set forth therein, i.e. "the

15   claim raised in the federal suit must have been actually raised or

16   inextricably intertwined with the state-court judgment," is not satisfied.

17   Merely because Defendant said all requirements are satisfied does

18   not mean it is so. In this instance, Defendant has misspoken.

19   Defendant has certainly read the 2-page transcription of the

20   underlying judgment, for Defendant has requested this court take

21   ----------------------------------------

22   2 /  Exhibit A refers to the underlying Engrossed Settled Statement certified by

23   Defendant Rubin and cited for Judicial Notice by defense counsel.

24   3/   Exhibit B refers to the appellate court decision on appeal of the underlying case, as

25   cited for Judicial Notice by defense counsel (Defendant's Exh. D).

1    Judicial Notice of it.

2    If this Court can find in said judgment [Exh. A, p. 8-9] anything

3    about Plaintiff's federal issue of a civil rights violation, Plaintiff will

4    go home and never come back.

5    *Rooker-Feldman* does not apply here.

6

7    II

8    Defendant's argument for lack of jurisdiction

9    of the person fails for lack of relevance.

10   Defendant cites FRCP 12(b)(2) as a basis for granting this motion, again relying on

11   the principle of sovereign immunity of the state.

12   As presented supra, plaintiff's complaint is not lodged against the state, nor against

13   an employee of the state in any official capacity. Sovereign immunity does not apply,

14   and therefore cannot be a basis for dismissing the Complaint.

15   III

16   Defendant's argument regarding failure to state a claim upon which relief

17   can be granted, fails for being premised on falsehoods.

18   Defendant cites FRCP 12(b)(6) as its final basis for granting this motion, arguing not

19   only judicial immunity but also that Plaintiff cannot state a claim for conspiracy (even

20   though the conspiracy may not ultimately be needed to show the civil rights violation

21   alleged in the complaint).

22   Looking to Defendant's judicial immunity argument beginning on Motion P's & A's p.

23   4 and identified as argument "B", the defense fails to acknowledge that Defendant

24   Rubin is being sued for an act done without right whatsoever. It is time to examine more

25   of the deception used by the defense:

1    Looking to Motion P's & A's p. 1, lines 6-7, Defendant makes reference to the

2    record where stating that "(t)he complaint arises from Plaintiff's apparent

3    dissatisfaction with the (underlying) proceedings..."

4    Looking to Motion P's & A's p. 2, line 10 and p. 3, line 1, Defendant again makes

5    reference to the record and describes the same issue as "...based on Judge

6    Rubin's conduct..."

7    But, when argument "B" begins, there is *no* reference to the record where the

8    same issue is described as "...dissatisfaction with Judge Rubin's *rulings*..."

9    [Motion P's & A's p. 4, lines 9-10, emphasis added].

10         Defendant is apparently injecting the word "rulings" merely for effect, in

11         order to bring a false sense of *discretion* to the forefront for the purpose of

12         its immunity argument. This is misleading and without basis in fact.

13   Looking to Motion P's & A's p. 2, lines 9-10, Defendant makes reference to the

14   record where confirming that "Plaintiff's complaint is brought under the Civil

15   Rights Act...for alleged violations of his right to due process..."

16   But, when arguing immunity, Defendant makes *no* reference to the record when

17   changing the same allegation to "...Plaintiff is suing Judge Rubin because he

18   presided over Plaintiff's infraction trial, found him guilty, and then sentenced him"

19   [Motion P's & A's p. 5, lines 22-23].

20         Such misleading allegation is perhaps indicative of Defendant's legal

21         standing with respect to this argument.

22   Looking to Motion P's & A's p. 4, lines 14-15, during argument "B" again,

23   Defendant states that "...Judge Rubin is being sued in connection with his

24   exercise of a judicial function."

25   /////

1    Here again, Defendant plants a fictitious, unsupported concept within this

2    argument, without any reference to the record, apparently so that the law

3    cited by Defendant will be relevant to something.

4    The Complaint clearly alleges that Defendant Rubin and Defendant

5    Cornell conspired to act criminally where Defendant Cornell practiced law

6    while as a layperson, and that Defendant Rubin's participation in said

7    conspiracy was not a judicial act [Complaint, paragraphs 13-15].

8    The doctrine of judicial immunity protects a judge from being held

9    liable under section 1983 for any actions taken while he is acting

10   within his jurisdiction [*Schorle v. City of Greenhills*, 524 F.Supp 821,

11   828 (1981)].

12   But, a judge may be subject to liability when he has acted in the

13   clear absence of all jurisdiction [Id.]. And when a judge knows he

14   lacks jurisdiction, or acts in the face of clearly valid statutes or case

15   law depriving him of jurisdiction, judicial immunity is lost {Id.].

16   Thus, if the allegations of criminal conduct appearing within

17   the Complaint (paragraphs 10-14) can be proven, Defendant

18   Rubin will have acted in clear absence of all jurisdiction and

19   is vulnerable to liability in this civil action.

20   Defendant's misstatements force Plaintiff to present evidence:

21   In the underlying case, Judge Rubin decided to have a layperson

22   provide the People's argument against Plaintiff herein where, at the

23   commencement of oral argument the judge declared, "He (the

24   officer) is going to wave opening and reserve rebuttal" [Exh. A, p. 5,

25   lines 14-15].

1      It goes without saying that Defendant Rubin had no

2      discretion whatsoever to assign a layperson to

3      represent the People in a criminal action.

4      Also, directing the commencement of a criminal act is

5      not within a judge's right, where said layperson

6      became in violation of California Business and

7      Professions Code section 6126(a) for representing

8      the People in a court of law without being a member

9      of the State Bar.

10     In addition, Defendant Rubin's act aforesaid is

11     expressly prohibited by law, in that the judge and the

12     layperson-prosecutor acted in concert, conspiring to

13     commit said act in violation of California Penal Code

14     section 182 (a) 1, (a) 5, and;

15              In furtherance of said conspiracy, when the

16              defendant in the underlying action completed

17              his oral argument, Judge Rubin said to his

18              proxy prosecutor, "Alright, your rebuttal", at

19              which point the officer unleashed a three-

20              pronged legal argument on behalf of the

21              People and in direct opposition to the particular

22              arguments of the defendant therein [Exh. A, p.

23              7, lines 10-25].

24              Still another act in furtherance of this

25              conspiracy is seen in the judgment of the

1                          underlying case, where Defendant Rubin

2                          declares:

3                          "And so after considering the cases and the

4                          *arguments of both sides…*" [Exh. A, p. 9, line 9,

5                          emphasis added].

6              One needs only to ask oneself, "Is it legal for a layperson to argue

7              the law against a criminal defendant, on trial in any state in this

8              land, thereon advising the court that the defendant broke the law,

9              and then to have the court rely upon that layperson's legal

10             argument where finding the defendant guilty?" Even a layperson

11             knows that ain't right.

12             Defendant Rubin lost all subject matter jurisdiction in the underlying

13             action upon intentionally flouting a criminal law, a non-judicial act.

14             Therefore, judicial immunity simply cannot take hold.

15          Hence, Defendant's argument "B", beginning on Motion p. 4 is based

16          merely on false and deceptive premises, and no evidence. It is completely

17          without merit. The law argued therein is irrelevant to the actual facts

18          appearing within the record. Defendant's immunity argument "B" fails.

19 Defendant includes under FRCP 12(b)(6) an argument that Plaintiff cannot state a claim

20 for conspiracy. Defendant pursues this defense on Motion P's & A's p. 10 as argument

21 "E".

22          Within this argument, more deception by Defendant is clear, where on Motion P's

23          & A's p. 11, lines 3-4, Defendant treats the underlying matter as, …"where a

24          state court judge merely ruled in a criminal action properly before him."

25 /////

1    These attempts to constantly mislead the court deserve attention. This

2    case is not brought about because of any *ruling* in the state-court action.

3    Defendant knows this, and is therefore repeatedly attempting to confuse

4    the issues while using a falsehood to bolster a failed immunity theory.

5    Defendant argues, that for a conspiracy, "Plaintiff must 'demonstrate the

6    existence of an agreement or meeting of the minds to violate constitutional

7    rights'" [Motion P's & A's p. 10, lines 22-24].

8    This argument forces Plaintiff to present evidence:

9    Looking to the Settled Statement in the underlying matter [Exh. A, p. 5,

10    lines 14-20], Judge Rubin announces that the officer will furnish the legal

11    argument on behalf of the State. The record here further shows that this

12    announcement was made *without* consulting the officer.

13    Looking to the same document, Exh. A, p. 7, lines 10-25 (and as shown

14    @ p. 7 supra) when the defense's argument thereunder was complete,

15    Judge Rubin said, "Alright, your rebuttal," at which point the officer, without

16    questioning his assignment, argued the law on behalf of the People.

17    Clearly the judge and the officer knew, or should have known, that

18    there are laws against a layperson representing the People in a

19    criminal trial, yet the two of them had a silent *meeting of the minds*

20    where each clearly knew the other's role when conspiring to break

21    the law and thereby deprive Plaintiff herein of his constitutional right

22    to due process therein by having a layperson become the

23    Prosecutor against the defendant in said underlying action.

24    Looking again to Defendant's Motion P's & A's p. 10, lines 26-27, Defendant

25    argues on behalf of Plaintiff where citing more conspiracy law and stating, "Judge

1   Rubin must have, 'by some concerted action, intended to accomplish some

2   unlawful objective for the purpose of harming another which results in damage."

3   As pointed out in Plaintiff's argument immediately above, the record

4   clearly shows Judge Rubin directing a concerted violation of State criminal

5   law, resulting in damage to Plaintiff for violation of a constitutionally

6   protected right.

7   Defendant argues that, in a conspiracy, "(t)he agreement need not be overt, and

8   may be based on circumstantial evidence" [Motion P's & A's p. 11, lines 1-2].

9   Plaintiff agrees. *And this is perhaps the highpoint of the frivolous nature of*

10   *this motion. The defense was apparently so intent upon loading up the*

11   *moving papers with more and more legal citations, that eventually no one*

12   *was even paying attention to what the citations said.*

13   On Motion P's & A's p. 11, lines 5-9 and 18-28, Defendant argues another

14   irrelevance, the RICO Act, for no other reason, apparently, than to distract.

15   On Motion P's & A's p. 11, lines 11-12, Defendant argues against Plaintiff having

16   any "private right of action under Penal Code section 182."

17   Plaintiff has never claimed any such right. Plaintiff is no more a prosecutor

18   than was the officer in the underlying trial.

19   As an added note, a conspiracy is not necessary to prove this Defendant's

20   violation of section 1983. Plaintiff need only "...show that the defendant knew

21   about the violation and facilitated it, approved it (or) condoned it..." [*Koutnik v.*

22   *Brown*, 351 F.Supp.2d 871 (W.D.Wis. 2004)].

23   **VI**

24   Plaintiff's Complaint does in fact plead the requisite elements.

25   42 U.S.C. section 1983 states in relevant part:

1    "Every person who under color of (state law)…subjects, or causes to be

2    subjected, any citizen…to the deprivation of any rights…secured by the

3    Constitution and laws, shall be liable to the party injured in an action at law…"

4  Case law reveals that:

5    "In order to succeed on a (section) 1983 claim, plaintiff must prove two elements:

6    (1) that he was deprived of a right secured by the Federal Constitution or laws of

7    the United States; and (2) that he was subjected to this deprivation by a person

8    acting under color of state law" [Hale v. Vance, 267 F.Supp.2d 725, 730

9    (S.D.Ohio 2003)].

10  Looking to Plaintiff's Complaint:   (1) It is clearly alleged that the violation occurred

11  during a state-court hearing, by a state actor (shown supra to be a person), and

12  therefore under color of state law [Complaint, paragraphs 8-9]; and (2) It is clearly

13  alleged that the deprivation was one of "due process" and therefore a right under

14  Section 1 of the Fourteenth Amendment to the U.S. Constitution [Complaint, paragraphs

15  8-12].

16    Accordingly, Plaintiff need only to prove its allegations, to succeed in this action.

17    The Complaint is therefore sufficient or can easily be made sufficient.

18      Defendant has already furnished this Court with all of the facts related to

19      this case via the Defendant's Request for Judicial Notice.

20      There can be no issue of fact remaining, for Defendant Rubin himself has

21      certified as correct all facts appearing within the Engrossed Settled

22      Statement (Defendant's Exhibit A), a document which, by itself, proves the

23      material allegations of the Complaint.

24  /////

25  /////

1    Defendant has shown by way of this Motion, that Defendant cannot rely

2    upon any of the underlying facts as a basis for Defendant's defense, only

3    upon false premises, deceptive inferences, and misleading remarks.

4    Defendant's voluminous legal citations are not in relation to anything real.

5    By this Opposition, Plaintiff necessarily proved its case in order to overcome the

6    misleading nature Defendant's Motion to Dismiss. If it is within this Court's

7    authority, this Opposition might be treated as a Motion for Summary Judgment

8    for Plaintiff, or as a Motion against Defendant for Order to Show Cause, or both.

9    Therefore, Plaintiff requests the Motion be denied for Defendant's failure to present

10   anything of legal consequence, and that the Court set a date for trial of damages only.

11   Dated: _3-11-08_____                    Respectfully Submitted,

12                                             _Ray Robinson_____

13                                             Raymond Robinson, in pro per

14   /////

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT A



JUN 2007
FILED
CLERK
SUPERIOR COURT
SAN DIEGO
JUDICIAL
DISTRICT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

KEARNY MESA BRANCH

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff/Respondent,<br><br>    vs.<br><br>RAYMOND ROBINSON,<br><br>    Defendant/Appellant. | Case No.: Y337174<br><br>ENGROSSED SETTLED STATEMENT ON APPEAL |

Appellant's six stated grounds for appeal are as follows:

1. The trial court showed a preconceived bias prejudicial to appellant where attesting to the quality of the government's witness;

2. The government's witness failed to testify to all the elements of the alleged offense;

3. The trial court solicited legal advice from the government's witness, then relied thereupon for its ruling;

4. The trial court required appellant to defend against the wrong law;

5. The trial court erred where directing the government's witness to argue the government's case;

A-1

6. The trial court abused its discretion where not finding
   reasonable doubt of appellant's guilt.

### Statement of Evidence / Trial Court Proceedings

This case arises from a traffic citation issued to
appellant by Officer Brian Cornell of the San Diego Police
Department Traffic Division on November 15, 2006 at 2:45 p.m.

The location of the alleged violation is a large, city
intersection controlled by traffic signals on all four corners
and identified as Balboa Avenue (hereinafter "Balboa") at
Mercury Street (hereinafter "Mercury").

Balboa has five lanes entering said intersection westbound,
two of which are turn lanes, and the other three of which
resume on the far side. Said "three" lanes are hereinafter
identified as #1, #2 and #3, with #1 being the left-most of
the three, traveling westbound.

Officer Cornell was proceeding in his police cruiser in the
westbound #2 lane of Balboa, approaching the intersection at
Mercury. Defendant's car was southbound on Mercury, in the
right turn lane, about to make a right turn on a red light
into the westbound #3 lane of Balboa.

**Officer's Testimony:**

OFFICER CORNELL: "I had a green light… When I got
partially into the intersection, I noticed (defendant's
car)…stopped at the red light… It proceeded to make a right
turn on this red light as I moved through the intersection. I
had been traveling at a safe speed. I was able to put on my
brakes at a moderate force. I actually came to a stop, since I
was trying to move to the right-most lane (which) I'll call



1 the #3 lane. I came to a stop to avoid any type of collision.

2 The driver also came to a stop and we encountered each other

3 at stopped positions in the intersection.

4     "My partner's window was down… I heard the driver as

5 he looked at us (and) yelled, 'You can't change lanes in an

6 intersection.' … I directed him to pull over to the curb… (and

7 I told him)… 'that's not a real accurate statement because

8 there are no lanes in intersections,' and consequently there

9 are no lanes able to be changed in intersections. I told him I

10 was going to write him a ticket… for violation of right of

11 way…"

12     On cross-examination, Officer Cornell was asked whether

13 defendant's attempted right turn on red resulted in a crash or

14 whether any vehicle had been caused to brake hard or to swerve

15 out of the way, or even honk a horn. The officer's response

16 was no in each instance.

17 **Defendant's Testimony**:

18     The audiotape reveals some of defendant's decision-making

19 process when attempting to execute the said turn from

20 southbound Mercury into the #3 lane of westbound Balboa.

21     MR. ROBINSON: "So I've got the officer here, me

22 here. This is a turn that I make three times a week… on my way

23 from work to the place where I work out. That's like 750 times

24 I've made this turn in the last five years.

25     "So what I've got is a situation where the right

26 lane (#3 lane of westbound Balboa) clears out, I'm accustomed

27 to this, and these two lanes (#1 and #2 of westbound Balboa)

28 still have traffic in them. And so I'm looking at a red light,

A-3

1  I'm sitting there,… the officer's car is just about…entering
2  the intersection. … I know he's not going to deviate from his
3  direction… I've got this free lane open that's very safe, I
4  use it all the time. I've never had a problem with that.

5      "But, here I go to make my turn, and of course I
6  always pay attention because there's oncoming cars, so I watch
7  as I'm making my turn, I make it gradually, very carefully,
8  but as I do, suddenly, without warning, the patrol car… starts
9  coming right at me, so I just stopped…

10      "I was caught off guard. I had no way of knowing the
11  officer was going to suddenly change lanes like that. … So
12  there I was. I had no way to know."

13  **Officer's Redirect**:

14      OFFICER CORNELL: "… this lane (#3 of westbound
15  Balboa) was available when I began pointing my police car
16  toward it. It became unavailable when he (defendant) crossed
17  through the crosswalk and continued his turn. I was hoping he
18  would pause but he opted not to. I came to a stop. I could
19  have moved back into the #2 lane but I decided to come to a
20  stop and meet this driver."

21  **Prior to Oral Argument**:

22      THE COURT: "Educate me. If I'm in the #2 lane on
23  westbound Balboa crossing Mercury, is it my discretion as a
24  driver to move into the #3 lane on the other side?"

25      OFFICER CORNELL: "Or even the #1 lane if they're all
26  available because none of the vehicle codes apply. And you
27  don't need a signal because you're not changing lanes. Lanes
28  do not exist in this area (inside the intersection)."

A-4

1   THE COURT: "Okay, you've educated me. I think I had

2   a similar understanding to his (defendant)... that I had to keep

3   my lane position until I crossed the intersection."

4   ***

5   The court sought and received further clarification of the

6   lane arrangements of said intersection, utilizing input from

7   the officer. When defendant sought to add to said

8   clarification, the following was heard:

9   THE COURT: "Mr. Robinson... we're doing a fact

10  finding, we're trying to figure out, I'm real familiar with

11  him, he is probably one of the better traffic officers we

12  have. He's educated me today."

13  **Trial Court Argument**:

14  THE COURT: "He (the officer) is going to wave

15  opening and reserve rebuttal."

16  MR. ROBINSON: "So he's going to be able to argue?"

17  THE COURT: "Right. He has first and last but he's

18  not going to go first. He's going to let you go instead and

19  he's going to go last." (The court made this arrangement

20  without any apparent input from the officer.)

21  Defendant began with an argument intended to take away the

22  alleged right of way of the officer. While traversing the

23  intersection, the officer had failed to signal any change of

24  course when moving from the #2 lane to the #3 lane, into which

25  defendant was attempting to turn. Because defendant was

26  clearly affected by said change of direction, VC 22107

27  precluded the officer from ever gaining a right of way to

28  which to yield.

A-5

1      Defendant then argued a case entitled Wakefield v.
2    Horn, 109 Cal. App. 325, 326/327, where a truck (Mr.
3    Wakefield) had turned right, onto a highway and was struck
4    from behind by a car (Mrs. Horn) going the same direction. The
5    trial court therein found Mrs. Horn at fault, so she appealed
6    claiming to have had the right of way (under an early version
7    of VC 21804). The appellate court said no, because there had
8    been ample space for Mrs. Horn to have slowed, or to have
9    driven to the left of the Wakefield truck. In the instant case
10   the officer admitted to having been able to moderately slow
11   his speed before arriving in the proximity of defendant's car,
12   and also that he could have stayed in the #2 lane and driven
13   to the left of defendant's car. Defendant argued that the
14   Wakefield case was on point and should suffice as a valid
15   defense, upon which the following was heard:
16       MR. ROBINSON: "So the facts of the case are
17   identical and I would guess the conclusion would be
18   identical."
19       THE COURT: "Have you done a comparison of the
20   statutes from 1930 until now?"
21     Defendant didn't know, so went on to another argument.
22       MR. ROBINSON: "The officer has not been able to
23   testify to all the elements of the case. There is the
24   requirement of immediate hazard. The officer did say… nobody
25   had to screech on their brakes or swerve out of the way, or
26   there was no accident caused. No one even honked their horn.
27   So there's been no testimony and no proof shown that there was
28   /////

A-6

1  any immediate hazard. So I think based on that alone he has

2  not fulfilled his obligation to prove the case.

3       "And the last argument I would have is that the

4  officer has chosen the wrong statute. I'm being asked to

5  defend against a statute that's governing the right of way on

6  the open road, whereas the officer's testimony describes a

7  controlled intersection, which is 21802. I don't think I can

8  be asked to defend against a situation where the facts of the

9  case don't jibe with the law."

10      THE COURT: "Alright, your rebuttal."

11      OFFICER CORNELL: "He mentioned right of way. That's

12 my right of way. Unfortunately at that moment it was my right

13 of way. I had a green light, he's got a red one. My right of

14 way. I don't know how more simply I could put it.

15      "He tried to bring up an argument of this case back

16 in the thirties, where a truck pulled out and she had room to

17 go around. This isn't go-carts at the fun center. We don't try

18 to drive around people unless we have to. I had the legal

19 presentation of either of those lanes… He decided to pull out

20 since he thought I was going into a different lane.

21      "He made a comment about an immediate hazard. Well,

22 there was an immediate hazard because I was going that way and

23 I could legally go that way and if I didn't apply my brakes in

24 a moderate fashion I would have… (collided with)… his car…"

25      THE COURT: "Alright."

26 (Neither the officer nor the court ever acknowledged

27 defendant's argument of having been forced to defend against a

28 statute unrelated to the facts of the case.)

Settled Statement - 7

A-7

**Judgment and Sentencing Transcribed:**

    THE COURT: "The case is before the court now for its ruling. And this is the judgment of the court. This is probably not the intersection that is the crowning achievement of San Diego…

    "So the question then becomes, there really doesn't seem to be any dispute of the facts that I can tell. You're both narrating the same event. You're not disputing the facts. You're disputing the application of the facts to the law, basically.

    "The officer's got you going five miles an hour, you say you're going five miles an hour, slow. So, you guys have each other in the same lanes doing the same thing.

    "The real question is, what is the application of the law? The officer has cited the defendant, Mr. Robinson, under 21804 (a) of the Vehicle Code, which states… (the court reads the section aloud).

    "So the first question, first argument Mr. Robinson makes is that there was no real immediate hazard, that at least based on the sum of his cases, that the officer could have slowed, the officer could have chosen another lane. I don't think these cases are quite on point. I think the immediate hazard would be the officer himself, as the officer stated, and the issue was, it affected both cars coming to a stop, which to me suggests there was a hazard… which kind of gets us back to the no lane changing or the appearance of a lane change in an intersection. I have to confess, I was of the same belief that you really couldn't change position in an

A-8

1  intersection, you've got to go straight across before you

2  change lanes. Now, that's not the case.

3       "And so the officer actually had the, going

4  east/west on Balboa, had the option…in seeing clear lanes

5  across, to select the lane they wanted to go into, so there

6  was nobody next to them or on either side. And so the officer

7  selected lane #3 on the westbound and that lane should have

8  been open.

9       "And so after considering the cases and the

10  arguments of both sides, both parties, I'm finding that VC

11  21804 (a) was violated by Mr. Robinson.

12       "So we'll look now to sentencing. Mr. Robinson, you

13  have a perfect driving record. So the question is, do you want

14  to go to traffic school? (The court explains defendant's

15  rights re appeal, and re traffic school, to which defendant

16  agrees.)

17       "So I'm going to impose traffic school. The fine's

18  supposed to be $180.00. I'm going to impose it but I'm going

19  to stay, um, $130.00 of it for a year, no same or similar,

20  from the time that it gets imposed if it gets imposed."

21    The foregoing constitutes the complete settled statement on

22  appeal in this case.

23  Dated:_____    Engrossment Certified this date by:

24  

25                       _____

26                 The Honorable David M. Rubin

27                  Judge of the Superior Court

28  /////

A-9

# EXHIBIT B

F I L E D
Clerk of the Superior Court

JAN 1 8 2008

By: Anthony Shirley, Deputy

1

2

3

4

5

6

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                 **FOR THE COUNTY OF SAN DIEGO**

10                         **APPELLATE DIVISION**

11   THE PEOPLE OF THE STATE OF          )   Appellate Division No.:   CA 206475
     CALIFORNIA,                         )
12                                       )   Trial Court Case No.:     Y337174
              Plaintiff(s) and Respondent(s),  )   (Central Division, Kearny Mesa Branch)
13                                       )
              v.                         )              **O R D E R**
14                                       )
     RAYMOND ROBINSON,                   )
15                                       )
              Defendant(s) and Appellant(s).  )
16                                       )
                                         )
17   ─────────────────────────────────  )

18        The judgment of the trial court is reversed and the case is dismissed in the interests of

19   justice. (*People v. Kriss* (1979) 96 Cal.App.3d 913.)

20
          JAN 1 8 2008
21   Dated:_____

22                                         _____  P.J.
                                              STEPHANIE SONTAG
23
                                           _____  J.
24                                            ESTEBAN HERNANDEZ

25                                         _____  J.
                                              WILLIAM S. DATO
26

27

28   APP 01-18-08 P17                                              B-1

1    Raymond Robinson

2    4562 Illinois St.

3    San Diego, CA 92116

4    (619) 283-3121

5    xray.1@cox.net

6    in pro per

7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    RAYMOND ROBINSON,       )    Case No.:  '08 CV 0244 DMS BLM

12           Plaintiff,       )    **ACKNOWLEDGEMENT OF SERVICE**

13       vs.                )

14    DAVID RUBIN and BRIAN CORNELL,   )

15          Defendants.      )

16

17    I, Monica Mansour____, represent Court Counsel of the Superior Court of California,

18    County of San Diego. As such, I am authorized to accept service of process on behalf of Judge David

19    Rubin, a Defendant in the above-entitled action. I am in possession of a copy of PLAINTIFF'S

20    OPPOSITION TO DEFENDANT JUDGE RUBIN'S NOTICE OF MOTION TO DISMISS THE COMPLAINT

21    WITH PREJUDICE, in said action.

22    Dated: 3/11/08____            Monica Mansour

23

24

25