# EXHIBIT TABLE OF CONTENTS

Page

EXHIBIT A    Engrossed Settled Statement on Appeal filed July 14, 2007, in *People of the State of California v. Raymond Robinson*, California Court Case No. Y337174, Appellate Division No. CA206475……………………………………………………… A.1

EXHIBIT B    Appellant's Opening Brief on Appeal signed September 11, 2007, in *People of the State of California v. Raymond Robinson*, California Court Case No. Y337174, Appellate Division No. CA206475…………………………………….. B.1

EXHIBIT C    Respondent's Brief on Appeal filed September 28, 2007, in *People of the State of California v. Raymond Robinson*, California Court Case No. Y337174, Appellate Division No. CA206475.................................................................................. C.1

EXHIBIT D    Order dated January 18, 2008, in *People of the State of California v. Raymond Robinson*, California Court Case No. Y337174, Appellate Division No. CA206475……………... D.1

EXHIBIT E    Remittitur filed February 5, 2008, in *People of the State of California v. Raymond Robinson*, California Court Case No. Y337174, Appellate Division No. CA206475..……………... E.1

EXHIBIT F    First Amended Complaint filed May 1, 2008, in *Raymond Robinson v. David Rubin and Brian Cornell*, U.S. Dist. Ct., So Dist. Cal., 08-CV-0244 DMS (BLM)……………………. F.1

**EXHIBIT A**

FILED
San Diego Superior Court

JUL 1 4 2007

Clerk of The Superior Court
By: N. Damon

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

KEARNY MESA BRANCH

THE PEOPLE OF THE STATE OF ) Case No.: Y337174
                             )
CALIFORNIA,                  ) ENGROSSED SETTLED STATEMENT
                             ) ON APPEAL
      Plaintiff/Respondent,  )
                             )
      vs.                    )     CA206475
                             )
RAYMOND ROBINSON,            )
                             )
      Defendant/Appellant.   )
                             )

Appellant's six stated grounds for appeal are as follows:

1. The trial court showed a preconceived bias prejudicial
   to appellant where attesting to the quality of the
   government's witness;

2. The government's witness failed to testify to all the
   elements of the alleged offense;

3. The trial court solicited legal advice from the
   government's witness, then relied thereupon for its
   ruling;

4. The trial court required appellant to defend against the
   wrong law;

5. The trial court erred where directing the government's
   witness to argue the government's case;

A-1

1   6. The trial court abused its discretion where not finding

2      reasonable doubt of appellant's guilt.

3   **Statement of Evidence / Trial Court Proceedings**

4   This case arises from a traffic citation issued to

5   appellant by Officer Brian Cornell of the San Diego Police

6   Department Traffic Division on November 15, 2006 at 2:45 p.m.

7   The location of the alleged violation is a large, city

8   intersection controlled by traffic signals on all four corners

9   and identified as Balboa Avenue (hereinafter "Balboa") at

10  Mercury Street (hereinafter "Mercury").

11  Balboa has five lanes entering said intersection westbound,

12  two of which are turn lanes, and the other three of which

13  resume on the far side. Said "three" lanes are hereinafter

14  identified as #1, #2 and #3, with #1 being the left-most of

15  the three, traveling westbound.

16  Officer Cornell was proceeding in his police cruiser in the

17  westbound #2 lane of Balboa, approaching the intersection at

18  Mercury. Defendant's car was southbound on Mercury, in the

19  right turn lane, about to make a right turn on a red light

20  into the westbound #3 lane of Balboa.

21  **Officer's Testimony:**

22      OFFICER CORNELL: "I had a green light… When I got

23  partially into the intersection, I noticed (defendant's

24  car)…stopped at the red light… It proceeded to make a right

25  turn on this red light as I moved through the intersection. I

26  had been traveling at a safe speed. I was able to put on my

27  brakes at a moderate force. I actually came to a stop, since I

28  was trying to move to the right-most lane (which) I'll call

A2

1  the #3 lane. I came to a stop to avoid any type of collision.

2  The driver also came to a stop and we encountered each other

3  at stopped positions in the intersection.

4  　　　"My partner's window was down… I heard the driver as

5  he looked at us (and) yelled, 'You can't change lanes in an

6  intersection.' … I directed him to pull over to the curb… (and

7  I told him)… 'that's not a real accurate statement because

8  there are no lanes in intersections,' and consequently there

9  are no lanes able to be changed in intersections. I told him I

10  was going to write him a ticket… for violation of right of

11  way…"

12  　On cross-examination, Officer Cornell was asked whether

13  defendant's attempted right turn on red resulted in a crash or

14  whether any vehicle had been caused to brake hard or to swerve

15  out of the way, or even honk a horn. The officer's response

16  was no in each instance.

17  **Defendant's Testimony:**

18  　The audiotape reveals some of defendant's decision-making

19  process when attempting to execute the said turn from

20  southbound Mercury into the #3 lane of westbound Balboa.

21  　　　MR. ROBINSON: "So I've got the officer here, me

22  here. This is a turn that I make three times a week… on my way

23  from work to the place where I work out. That's like 750 times

24  I've made this turn in the last five years.

25  　　　"So what I've got is a situation where the right

26  lane (#3 lane of westbound Balboa) clears out, I'm accustomed

27  to this, and these two lanes (#1 and #2 of westbound Balboa)

28  still have traffic in them. And so I'm looking at a red light,

A.3

1   I'm sitting there,… the officer's car is just about…entering
2   the intersection. … I know he's not going to deviate from his
3   direction… I've got this free lane open that's very safe, I
4   use it all the time. I've never had a problem with that.

5       "But, here I go to make my turn, and of course I
6   always pay attention because there's oncoming cars, so I watch
7   as I'm making my turn, I make it gradually, very carefully,
8   but as I do, suddenly, without warning, the patrol car… starts
9   coming right at me, so I just stopped…

10      "I was caught off guard. I had no way of knowing the
11  officer was going to suddenly change lanes like that. … So
12  there I was. I had no way to know."

13  **Officer's Redirect**:

14      OFFICER CORNELL: "… this lane (#3 of westbound
15  Balboa) was available when I began pointing my police car
16  toward it. It became unavailable when he (defendant) crossed
17  through the crosswalk and continued his turn. I was hoping he
18  would pause but he opted not to. I came to a stop. I could
19  have moved back into the #2 lane but I decided to come to a
20  stop and meet this driver."

21  **Prior to Oral Argument**:

22      THE COURT: "Educate me. If I'm in the #2 lane on
23  westbound Balboa crossing Mercury, is it my discretion as a
24  driver to move into the #3 lane on the other side?"

25      OFFICER CORNELL: "Or even the #1 lane if they're all
26  available because none of the vehicle codes apply. And you
27  don't need a signal because you're not changing lanes. Lanes
28  do not exist in this area"(inside the intersection).

A.4

011

1       THE COURT: "Okay, you've educated me. I think I had

2   a similar understanding to his (defendant)… that I had to keep

3   my lane position until I crossed the intersection."

4   ***

5     The court sought and received further clarification of the

6   lane arrangements of said intersection, utilizing input from

7   the officer. When defendant sought to add to said

8   clarification, the following was heard:

9       THE COURT: "Mr. Robinson… we're doing a fact

10  finding, we're trying to figure out, I'm real familiar with

11  him, he is probably one of the better traffic officers we

12  have. He's educated me today."

13  **Trial Court Argument**:

14      THE COURT: "He (the officer) is going to wave

15  opening and reserve rebuttal."

16      MR. ROBINSON: "So he's going to be able to argue?"

17      THE COURT: "Right. He has first and last but he's

18  not going to go first. He's going to let you go instead and

19  he's going to go last." (The court made this arrangement

20  without any apparent input from the officer.)

21    Defendant began with an argument intended to take away the

22  alleged right of way of the officer. While traversing the

23  intersection, the officer had failed to signal any change of

24  course when moving from the #2 lane to the #3 lane, into which

25  defendant was attempting to turn. Because defendant was

26  clearly affected by said change of direction, VC 22107

27  precluded the officer from ever gaining a right of way to

28  which to yield.

A.5

1    Defendant then argued a case entitled Wakefield v.
2  Horn, 109 Cal. App. 325, 326/327, where a truck (Mr.
3  Wakefield) had turned right, onto a highway and was struck
4  from behind by a car (Mrs. Horn) going the same direction. The
5  trial court therein found Mrs. Horn at fault, so she appealed
6  claiming to have had the right of way (under an early version
7  of VC 21804). The appellate court said no, because there had
8  been ample space for Mrs. Horn to have slowed, or to have
9  driven to the left of the Wakefield truck. In the instant case
10  the officer admitted to having been able to moderately slow
11  his speed before arriving in the proximity of defendant's car,
12  and also that he could have stayed in the #2 lane and driven
13  to the left of defendant's car. Defendant argued that the
14  Wakefield case was on point and should suffice as a valid
15  defense, upon which the following was heard:
16    MR. ROBINSON: "So the facts of the case are
17  identical and I would guess the conclusion would be
18  identical."
19    THE COURT: "Have you done a comparison of the
20  statutes from 1930 until now?"
21    Defendant didn't know, so went on to another argument.
22    MR. ROBINSON: "The officer has not been able to
23  testify to all the elements of the case. There is the
24  requirement of immediate hazard. The officer did say… nobody
25  had to screech on their brakes or swerve out of the way, or
26  there was no accident caused. No one even honked their horn.
27  So there's been no testimony and no proof shown that there was
28  /////

A.6

1  any immediate hazard. So I think based on that alone he has
2  not fulfilled his obligation to prove the case.

3      "And the last argument I would have is that the
4  officer has chosen the wrong statute. I'm being asked to
5  defend against a statute that's governing the right of way on
6  the open road, whereas the officer's testimony describes a
7  controlled intersection, which is 21802. I don't think I can
8  be asked to defend against a situation where the facts of the
9  case don't jibe with the law."

10      THE COURT: "Alright, your rebuttal."

11      OFFICER CORNELL: "He mentioned right of way. That's
12  my right of way. Unfortunately at that moment it was my right
13  of way. I had a green light, he's got a red one. My right of
14  way. I don't know how more simply I could put it.

15      "He tried to bring up an argument of this case back
16  in the thirties, where a truck pulled out and she had room to
17  go around. This isn't go-carts at the fun center. We don't try
18  to drive around people unless we have to. I had the legal
19  presentation of either of those lanes… He decided to pull out
20  since he thought I was going into a different lane.

21      "He made a comment about an immediate hazard. Well,
22  there was an immediate hazard because I was going that way and
23  I could legally go that way and if I didn't apply my brakes in
24  a moderate fashion I would have… (collided with)… his car…"

25      THE COURT: "Alright."
26  (Neither the officer nor the court ever acknowledged
27  defendant's argument of having been forced to defend against a
28  statute unrelated to the facts of the case.)

A.7

1    **Judgment and Sentencing Transcribed**:

2    <u>THE COURT</u>: "The case is before the court now for its

3    ruling. And this is the judgment of the court. This is

4    probably not the intersection that is the crowning achievement

5    of San Diego…

6    "So the question then becomes, there really doesn't

7    seem to be any dispute of the facts that I can tell. You're

8    both narrating the same event. You're not disputing the facts.

9    You're disputing the application of the facts to the law,

10   basically.

11   "The officer's got you going five miles an hour, you

12   say you're going five miles an hour, slow. So, you guys have

13   each other in the same lanes doing the same thing.

14   "The real question is, what is the application of

15   the law? The officer has cited the defendant, Mr. Robinson,

16   under 21804 (a) of the Vehicle Code, which states… (the court

17   reads the section aloud).

18   "So the first question, first argument Mr. Robinson

19   makes is that there was no real immediate hazard, that at

20   least based on the sum of his cases, that the officer could

21   have slowed, the officer could have chosen another lane. I

22   don't think these cases are quite on point. I think the

23   immediate hazard would be the officer himself, as the officer

24   stated, and the issue was, it affected both cars coming to a

25   stop, which to me suggests there was a hazard… which kind of

26   gets us back to the no lane changing or the appearance of a

27   lane change in an intersection. I have to confess, I was of

28   the same belief that you really couldn't change position in an

A.8

1  intersection, you've got to go straight across before you
2  change lanes. Now, that's not the case.
3           "And so the officer actually had the, going
4  east/west on Balboa, had the option…in seeing clear lanes
5  across, to select the lane they wanted to go into, so there
6  was nobody next to them or on either side. And so the officer
7  selected lane #3 on the westbound and that lane should have
8  been open.
9           "And so after considering the cases and the
10 arguments of both sides, both parties, I'm finding that VC
11 21804 (a) was violated by Mr. Robinson.
12          "So we'll look now to sentencing. Mr. Robinson, you
13 have a perfect driving record. So the question is, do you want
14 to go to traffic school? (The court explains defendant's
15 rights re appeal, and re traffic school, to which defendant
16 agrees.)
17          "So I'm going to impose traffic school. The fine's
18 supposed to be $180.00. I'm going to impose it but I'm going
19 to stay, um, $130.00 of it for a year, no same or similar,
20 from the time that it gets imposed if it gets imposed."
21    The foregoing constitutes the complete settled statement on
22 appeal in this case.
23 Dated:  _8-6-07_          Engrossment Certified this date by:
24
25
26                           The Honorable David M. Rubin
27                           Judge of the Superior Court
28 /////

A.9

**EXHIBIT B**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**CENTRAL DIVISION, APPELLATE DEPARTMENT**

|  |  |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,** ) ) ) | Case No.: CA206475 |
| Plaintiff/Respondent, ) | Traffic Court No.: Y337174 |
| **vs.** ) ) | Hon. David Rubin, Judge |
| **RAYMOND ROBINSON,** ) ) | |
| Defendant/Appellant. ) ) ) | |

## APPELLANT'S OPENING BRIEF

Raymond Robinson
4562 Illinois Street
San Diego, CA 92116
Defendant in pro per

**B.1**

## TABLE OF CONTENTS

Table of Authorities…………………………………………………………[a]

Appellant's Opening Brief………………………………………………….. 1

   SUMMARY OF THE CASE………………………………………….... 1

   MATTERS OF CONTENTION…………………………………….… 3

   ARGUMENT……………………………………………………….…. 3

   PRAYER……………………………………………………………….13

## TABLE OF AUTHORITIES

CASES:

   People v. Butler (1980) 105 Cal.App.3d 585……………….………… 5

   People v. Butcher (1986) 185 Cal.App.3d 929……….……………… 5

   Arizona v. Fulminante (1990) 499 U. S. 279……………………….. 11

   Malone v. Perryman (1964) 226 Cal.App.2d 227……………………. 13

STATUTES:

   California Penal Code section 19.7…………………………………….. 3

   California Penal Code section 20……………………………………..3, 5

   California Vehicle Code section 22107…………………….……… 7, 11

   California Vehicle Code section 21453 (b)…………………………6, 12

   California Vehicle Code section 21804 (a)…………………………6, 12

   California Civil Code section 3531………………………………….13

[a]

**B.2**

Raymond Robinson
4562 Illinois St.
San Diego, CA 92116
(619) 283-3121

Defendant and Appellant in Pro Per

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

### CENTRAL DIVISION, APPELLATE DEPARTMENT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | Case No.: CA206475 |
| | (Traffic Court No. Y337174) |
| Plaintiff/Respondent, | |
| | **APPELLANT'S OPENING BRIEF** |
| vs. | |
| RAYMOND ROBINSON, | |
| Defendant/Appellant. | |

This appeal is taken from a traffic infraction trial where the appellant had sought acquittal but was found guilty. The traffic court decision is final.

### SUMMARY OF THE CASE

Appellant was cited November 15, 2006 at 2:45 p.m. for an infraction violation of Vehicle Code section 21804 (a) for failure to yield the right-of-way to a San Diego Police cruiser driven by Officer Brian Cornell of the Traffic Division.

The incident occurred at a large, San Diego intersection known as Balboa Avenue at Mercury Street. Officer Cornell was traveling westbound in the center lane (#2) of Balboa, approaching Mercury, while appellant was /////

B-3

1  contemplating a right turn on a red light from southbound

2  Mercury into the westbound #3 lane of Balboa.

3      As the officer began moving through the intersection

4  on a green light, appellant simultaneously commenced its

5  right turn against the red light. A problem arose because

6  both drivers anticipated exiting the intersection via the

7  #3 lane of westbound Balboa, and consequently the two

8  vehicles came to a stop where encountering one another in

9  the intersection. No accident occurred but appellant

10  criticized Officer Cornell for changing lanes in the

11  intersection and was thereupon cited after being advised

12  that lanes do not exist within intersections.

13      At trial, following the conclusion of testimony, the

14  court, Hon. David Rubin presiding, admitted to having been

15  of the same belief as appellant, that a motorist must

16  maintain lane position while traversing an intersection.

17  However, Officer Cornell convinced the court otherwise, and

18  appellant was later found guilty based partially thereupon.

19      Prior to the commencement of oral argument, the court

20  sought Officer Cornell's input for further clarification of

21  the physical layout of said intersection. But, when

22  appellant attempted to add thereto, the court made clear

23  its preference to acquire such information solely from

24  Officer Cornell.

25      As legal argument began, the court specified that

26  Officer Cornell would be waving opening argument but would

27  reserve rebuttal. Appellant brought four distinct

28  arguments, three of which were rebutted by Officer Cornell.

B.4

1   Satisfied that there was no dispute of the facts, the

2   lower court decided that appellant's car should not have

3   been in the way of Officer Cornell's cruiser and therefore

4   VC 21804 (a) had been violated by appellant.

5

6   **MATTERS OF CONTENTION**

7   1) Whether the trial court believed intent existed;

8   2) Whether all elements of the offense were proven;

9   3) Whether the trial court exceeded its jurisdiction;

10  4) Whether the trial court was impartial; and,

11  5) Whether appellant was charged with the right offense.

12  **ARGUMENT**

13  I

14  THE TRIAL COURT ABUSED ITS DISCRETION

15  WHERE FAILING TO ACKNOWLEDGE THAT IT HAD

16  AFFIRMATIVELY FOUND NO CRIMINAL INTENT

17  The *California Penal Code* requires that, with few

18  exceptions, the provisions of law relating to misdemeanors

19  also apply to infractions, including burden of proof [Id.

20  at section 19.7].

21  Section 20 of said code makes clear that a crime or

22  public offense has not occurred without there being intent,

23  except in cases of criminal negligence.

24  Looking to page 2 of the *ENGROSSED SETTLED STATEMENT ON*

25  *APPEAL* (hereinafter "ESS"), Officer Cornell entered the

26  intersection in the westbound #2 lane while appellant

27  contemplated its right turn into the westbound #3 lane [Id.

28  at lines 16-20]. As the officer began traversing the

B-5

1  intersection, appellant began its turn [Id. at lines 24-25]
2  while believing the officer would maintain his #2 lane
3  position throughout the intersection [ESS p.4, lines 1-
4  3,10-12].

5      Following testimony, upon learning from Officer Cornell
6  that changing one's lane position while within an
7  intersection is proper, the court said, **"I think I had a**
8  **similar understanding to his (defendant)…that I had to keep**
9  **my lane position until I crossed the intersection"** [ESS p.4
10  lines 22-28; p.5 lines 1-3]. 1/

11     **a.)**  During trial court argument, Officer Cornell made
12           clear his *own* belief that appellant had had no
13           criminal intent, where arguing, **"He decided to pull**
14           **out since he thought I was going into a different**
15           **lane"** [ESS p.7, lines 19-20].
16     **b.)**  While rendering judgment, the court reiterated its
17           belief of appellant's belief, where disclosing, **"I**
18           **have to confess, I was of the same belief that you**
19           **really couldn't change position in an intersection,**
20           **you've got to go straight across before you change**
21           **lanes. Now, that's not the case"** [ESS at 8-9, lines
22           27-28, 1-2].
23  Thus, the argument here is that if the #3 lane had remained
24  fully available to appellant, as expected, no right-of-way
25  issue might exist. It is clear the court believed appellant
26  expected said lane to remain available, because the court
27  ------------------------------
28  1/ All quotations herein are emboldened merely to further distinguish them.

B-6

1  itself admitted it also would have expected the officer to
2  maintain his #2 lane position throughout the intersection.
3  Hence, the court affirmatively believed appellant had had
4  no intent to create a right-of-way issue.

5        c.)  Knowing there was no intent, the trial court abused
6              it discretion where choosing to find appellant
7              guilty in spite of *Penal Code* section 20.

8    Where it might be argued that appellant did not raise the
9  issue of *no intent* at trial, it should be noted that this
10 proposition's merit did not come to full fruition until
11 pronouncement of judgment. Also, **"if the new theory**
12 **presents only a question of law arising from facts which**
13 **are undisputed, (the appellate court) may consider the**
14 **issue"** [People v. Butler (1980) 105 Cal.App.3d 585, 588].
15 The trial court had indeed found no factual dispute [ESS at
16 8, line 8].

17   Where it might be argued that a judge's comments made
18 during trial are not reviewable, **"(i)n criminal cases an**
19 **appellate court may take into consideration the judge's**
20 **statements as a whole when they disclose an incorrect**
21 **rather than a correct concept of the relevant law, embodied**
22 **not merely in secondary remarks but in his basic ruling"**
23 [People v. Butcher (1986) 185 Cal.App.3d 929, 936].

24                                II

25        THE COURT'S ERRONEOUS FINDING OF THE ELEMENT
26           OF IMMEDIATE HAZARD LEAVES THE ALLEGED
27              VIOLATION REMAINING UNPROVEN
28 There are two scenarios here:

B-7

First of all, there seems a need to determine, based upon the officer's testimony, whether an *immediate hazard* was shown. [ESS p. 2, lines 22-28; p. 3, lines 1-11; p.4, lines 14-20]. In particular, the officer's proof included, **"I could have moved back into the #2 lane but I decided to come to a stop and meet this driver"** [ESS p.4, lines 18-20]. Does that sound like an immediate hazard existed?

Secondly, the California statutes relating to failure to yield the right-of-way all seem to have the *immediate hazard* element in common [*Vehicle Code* sections 21804 (a), 21453 (b), etc.], and the trial court said in its judgment, **"I think the immediate hazard would be the officer himself, as the officer stated, and the issue was, it affected both cars coming to a stop, which to me suggests there was a hazard…"** [ESS at 8, lines 22-25].

a.) One of the problems with the lower court's judgment is that it does not account for the point in time when appellant had had to make its decision, prior to commencing its turn, as to whether an immediate hazard existed.

b.) The court found **"a hazard"** where the two vehicles encountered one another at stopped positions in the intersection [Id.], but appellant had had to make its decision while still in the cross street, when the officer's cruiser was just entering the far side of the intersection in a totally different lane [ESS at 2, lines 16-20, at 4, lines 1-5].

B-8

1.) If such a hazard ever did come to exist, it was impossible for appellant to have anticipated it prior to the officer's change of direction becoming apparent, which occurred *after* appellant had committed to its turn [ESS at 2, lines 24-25, at 4, lines 5-9].

2.) Further complicating appellant's ability to anticipate any hazard upon commencing its turn, was the officer's failure to signal any intent to change course. Appellant testified, "...**without warning, the patrol car...starts coming right at me...**" and "**I had no way of knowing the officer was going to change lanes like that**" [ESS at 4, lines 8-12].

3.) Officer Cornell defended his failure to use his turn signal, where advising the court, "**And you don't need a signal because you're not changing lanes. Lanes do not exist in this area (inside the intersection)**" [ESS at 4, lines 26-28].

4.) *Vehicle Code* section 22107, as argued by appellant at trial [ESS at 5, lines 21-28] requires a proper signal anytime a change of direction affects another person. The trial court chose to be persuaded by Officer Cornell's unsubstantiated claim of having no

B·9

1  duty to signal, rather than pay heed to said

2  statute.

3  5.)  Hence, not only should Officer Cornell have

4  signaled a warning to appellant, the trial

5  court should have made its determination

6  regarding *immediate hazard* at the point in

7  time when appellant began its turn; not

8  later, after the officer's intent to change

9  course became known.

10  6.)  The trial court's finding of an immediate

11  hazard is erroneous.  The judgment is

12  therefore equally erroneous because the

13  evidence does not support it.

14  **III**

15  THE TRIAL COURT EXCEEDED ITS JURISDICTION

16  AND THEREBY CREATED A VOID JUDGMENT

17  While there appears to be a shortage of precedent cases

18  deciding the effect of a court directing a non-lawyer

19  witness to argue the People's side of a criminal matter,

20  such an egregious anomaly occurred in this case and

21  resulted in a jurisdictional excess sufficient to render

22  the judgment a nullity.

23  a.)  When the court announced that Officer Cornell would

24  be waving opening argument but would reserve

25  rebuttal, appellant asked, **"So he's going to be**

26  **able to argue?"** [ESS p.5, lines 14-16]. The court

27  responded, **"Right. He has first and last but he's**

28  **not going to go first. He's going to let you go**

B.10

1   **instead and he's going to go last"** [Id. lines 17-

2   19].

3   b.) When appellant's oral argument was complete, the

4   trial court said to Officer Cornell, **"Alright, your**

5   **rebuttal"** [ESS p.7, line 10].

6   c.) According to the verbatim transcription of the

7   audio tape, Officer Cornell began his rebuttal by

8   attempting to counter appellant's attack upon the

9   officer's right-of-way; then Officer Cornell

10   brought argument intended to denounce case law

11   presented by appellant; and lastly Officer Cornell

12   argued for the existence of an immediate hazard,

13   again in response to appellant's defense thereabout

14   [Id. lines 11-24].

15   d.) When Officer Cornell had completed the People's

16   argument, the court again said **"Alright"** before

17   orating its decision [Id. line 25].

18   e.) Such substantive argument by Officer Cornell was

19   intended to help persuade the court in favor of the

20   People, to appellant's prejudice, but without

21   authority.

22   **f.)** This deviation in procedure is not found in the

23   rules. The trial court had no right to hear such

24   argument, much less direct that it happen. The

25   judgment of the lower court is therefore subject to

26   attack and should properly be disposed of in a

27   manner other than affirmance.

28   /////

**B-11**

# IV

## THE JUDGMENT CANNOT STAND BECAUSE
## THE TRIAL COURT WAS NOT IMPARTIAL

Officer Cornell was clearly in a position to have a special influence upon the trial court:

a.) First, the court sought to be advised on the relevant law by Officer Cornell, a biased, non-lawyer, government witness [ESS p.4, lines 22-24]:

   1) Having received such legal advice, the court promptly stated, **"Okay, you've educated me,"** even though the officer's advice was contrary to what the court had believed when the hearing began [ESS p.4 lines 25-28, p.5 lines 1-3];

   2) The court later relied upon that very same legal advice in order to convict appellant [ESS p.8, lines 27-28; p.9, lines 1-11].

b.) Secondly, where the court sought Officer Cornell's input for further clarification of the physical layout of the intersection and appellant attempted to add thereto, the court made clear its desire to acquire such information only from Officer Cornell: **"Mr. Robinson… we're doing a fact finding, we're trying to figure out, I'm real familiar with him, he is probably one of the better traffic officers we have. He's educated me today"** [ESS p.5, lines 5-12];

B.12

1    c.)    Third, the trial court was in fact so influenced by

2           Officer Cornell that it later directed said officer

3           to argue the People's case [ESS p.7, lines 10-24];

4    d.)    Fourth, the trial court remained so persuaded by

5           Officer Cornell's naked argument of having no duty

6           to signal a change of direction within the

7           intersection, that it ignored contravening law in

8           *Vehicle Code* section 22107 as argued by appellant

9           at trial [ESS p.4, lines 22-28; p.5, lines 21-28];

10   e.)    Finally, the court stood behind Officer Cornell's

11          incorrect choice of traffic statutes and found

12          appellant guilty thereof [ESS p.9, lines 10-11]

13          even though said statute does not even apply to the

14          facts of the case [see argument V herein below].

15   **f.)**   This trial court apparently intended for Officer

16          Cornell to win the case no matter what. **"The entire**

17          **conduct of the trial from beginning to end is**

18          **obviously affected by…the presence on the bench of**

19          **a judge who is not impartial"** [Arizona v.

20          Fulminante (1990) 499 U.S. 279, 309-10].

21   g.)    Thus, it appears appellant has not been afforded

22          due process, and a reversal seems appropriate.

23   NOTE: If, where considering the argument immediately above,

24   this Court requires that the bias originate from an extra-

25   judicial source, judicial notice might be taken of the fact

26   that the trial court judge was newly elected to office

27   within less than nine months of this trial, having been

28   supported politically by all of the Police Officers

B-13

1  Associations in the County, and that said judge may have

2  felt beholden to such officers [see attachment hereto].

3                                    V

4              APPELLANT CANNOT BE FOUND IN VIOLATION OF

5                 A STATUTE THAT IS NOT RELEVANT TO

6                  THE CIRCUMSTANCES OF THE CASE

7  The record shows that the location of the incident was a

8  large, city intersection where appellant, facing a red

9  light, commenced a right turn and was cited for failure to

10 yield the right-of-way to the police cruiser [ESS p.2,

11 lines 7-8, 18-20; p.3, lines 9-11].

12    *Vehicle Code* section 21453 (b) seems to apply to the

13 circumstances:

14            "...**a driver, after stopping...**, **facing a steady**

15            **circular red signal, may turn right...(but)...shall**

16            **yield the right-of-way...to any vehicle that...is**

17            **approaching so closely as to constitute an**

18            **immediate hazard to the driver...**" [Id.].

19    Appellant, however, was forced to defend against *Vehicle*

20 *Code* section 21804 (a):

21            "**The driver of any vehicle about to enter or**

22            **cross a highway from any public or private**

23            **property, or from an alley, shall yield the**

24            **right-of-way to all traffic...approaching on the**

25            **highway close enough to constitute an immediate**

26            **hazard...**" [Id.].

27    The trial court read *Vehicle Code* section 21804 (a) into

28 its judgment and then found appellant in violation thereof

B-14

1  [ESS p.8, lines 16-17; p.9, lines 10-11] even though said

2  statute is not relevant to the facts of the case. **"The**

3  **provisions of section 21804 obviously d(o) not contemplate**

4  **the regulation of traffic over a highway crossing subject**

5  **to control by a signalling device…"** [Malone v. Perryman

6  (1964) 226 Cal.App.2d 227, 235].

7     It would seem reasonable to presume that had the

8  Legislature intended for the State's right-of-way statutes

9  to be used interchangeably, it might have written just one

10  such statute.

11     Furthermore, being made to defend against the wrong

12  statute results in absolute frustration, and **"(t)he law**

13  **never requires (such) impossibilities"** [Civil Code section

14  3531].

15     Clearly there exists reasonable doubt that appellant

16  violated *Vehicle Code* section 21804 (a), and the trial

17  court therefore committed reversible error where finding

18  appellant guilty thereof.

19     **WHEREFORE,** appellant Raymond Robinson, for the reasons

20  set forth herein above, requests a reversal of the lower

21  court's judgment, with directions to dismiss the case

22  because there appears no possibility of it being prosecuted

23  successfully.

24

25  Dated: 9-11-07                     *Ray Robinson*

26                                     Raymond Robinson

27                                     Appellant in pro per

28  /////

B.15

**EXHIBIT C**

F I L E D

Clerk of the Superior Court

SEP 2 8 2007

IN THE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, APPELLATE DIVISION

THE PEOPLE OF THE STATE OF
CALIFORNIA,

         Plaintiff/Respondent,

        v.

RAYMOND ROBINSON,

        Defendant/Appellant.

Appellate Division No.  CA206475
Superior Court No.  Y337174

---

RESPONDENT'S BRIEF

---

Appeal from the Judgment of the Superior Court
San Diego Judicial District
The Honorable David M. Rubin, Judge of the Superior Court

MICHAEL J. AGUIRRE, City Attorney
CHRISTOPHER S. MORRIS, Assistant City Attorney
JONATHAN I. LAPIN, Deputy City Attorney
California State Bar No. 194552

Office of the City Attorney
Appellate Unit
1200 Third Avenue, Suite 700
San Diego, California 92101-4103
Telephone:  (619) 533-5500

Attorneys for Plaintiff/Respondent

C.1

1        The People have reviewed Appellant's brief and submit without objection on the merits of

2 the appeal.

3        Dated: September 27, 2007

4                                   MICHAEL J. AGUIRRE, City Attorney

5

6                                    By

7                                        Jonathan I. Lapin
                                       Deputy City Attorney

8                                    Attorneys for Plaintiff/Respondent

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L: APP-APPEAL BRIEF RobinsonRaymond.doc                   1

C.2

MICHAEL J. AGUIRRE, City Attorney
CHRISTOPHER S. MORRIS, Assistant City Attorney
JONATHAN LAPIN, Deputy City Attorney

Office of the City Attorney
Criminal Division
1200 Third Avenue, Suite 700
San Diego, California 92101-4103
Telephone (619) 533-5500

Date:    January 18, 2008
Time:    10:00 a.m.
Dept:    Presiding
Judge:   The Honorable Peter C. Deddeh

Attorneys for Plaintiff

## SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SAN DIEGO

DECLARATION OF
SERVICE BY MAIL

Case No.  CA206475
*People v. Raymond Robinson*

    I, Cheryl Willis, declare that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the action; and I am employed in the County of San Diego, California, in which county the within-mentioned mailing occurred. My business address is 1200 Third Avenue, Suite 700, San Diego, California, 92101-4103. I served the following document(s): **RESPONDENT'S BRIEF,** by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:

Raymond Robinson
4562 Illinois Street
San Diego, CA 92116

The Honorable David M. Rubin
Judge of the Superior Court
220 West Broadway
San Diego, CA 92101

    I then sealed each envelope and with the postage thereon fully prepaid, deposited each in the United States mail at San Diego, California on ⁔ᵢ ᵢ ⁔⁀ ⁀ ⁔ ⁀ ᵕ , 2007.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on ⁔ ᵢ ᵢ ⁔⁀ ⁀ ⁔ ᵕ , 2007, at San Diego, California.

                                               Cheryl Willis

**PROOF OF SERVICE BY MAIL**
**C.C.P. §§ 1013(a); 2015.5**

C.3

**EXHIBIT D**

1

2

3

F I L E D
Clerk of the Superior Court

JAN 1 8 2008

By: Anthony Shirley, Deputy

4

5

6

7

8 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 **FOR THE COUNTY OF SAN DIEGO**

10 **APPELLATE DIVISION**

11 THE PEOPLE OF THE STATE OF )  Appellate Division No.:  CA 206475
   CALIFORNIA, )
12 ) Trial Court Case No.:    Y337174
   ) (Central Division, Kearny Mesa Branch)
13      Plaintiff(s) and Respondent(s), )
   )
14      v. ) **O R D E R**
   )
15 RAYMOND ROBINSON, )
   )
16      Defendant(s) and Appellant(s). )
   )
17 _____)

18       The judgment of the trial court is reversed and the case is dismissed in the interests of

19 justice. (*People v. Kriss* (1979) 96 Cal.App.3d 913.)

20

21 Dated: JAN 1 8 2008 _____

22 _____ P.J.
          STEPHANIE SONTAG

23 _____ J.
          ESTEBAN HERNANDEZ

24

25 _____ J.
          WILLIAM S. DATO

26

27

28 APP 01-18-08 P17

**D.1**

**EXHIBIT E**

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN DIEGO
### APPELLATE DIVISION
COUNTY COURTHOUSE - 220 WEST BROADWAY - SAN DIEGO, CA

FOR COURT USE ONLY

PEOPLE

Respondent

vs.

RAYMOND ROBINSON

Appellant

From SAN DIEGO Court

**REMITTITUR**
**(CRC Rule 8.773, 8.793)**

AD CA206475

LJ Y337174

I, certify the attached is a true and correct copy of the original order or opinion entered in the above-entitled case on January 18, 2008 and the order or opinion has now become final.

Witness my hand and seal of the Court



Date:  February 5, 2008

**CLERK OF THE SUPERIOR COURT**

by _____, Deputy
N. Damron

---

**CLERK'S CERTIFICATE**

The foregoing is a full, true and correct copy of the original on file in this office.

**CLERK OF THE SUPERIOR COURT**

Date:  February 5, 2008

by _____, Deputy

**E.1**

**EXHIBIT F**

**NUNC PRO TUNC**

MAY - 1 2008

FILED

2008 MAY -5 AM 11: 14

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____F.N.H_____DEPUTY

1  Raymond Robinson

2  4562 Illinois St.

3  San Diego, CA 92116

4  (619) 283-3121

5  xray.1@cox.net

6  in pro per

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  RAYMOND ROBINSON,                 ) Case No.:  '08 CV 0244 DMS (BLM)

12              Plaintiff,            ) **FIRST AMENDED COMPLAINT FOR**
                                      ) **DAMAGES**
13          vs.

14  DAVID RUBIN and BRIAN CORNELL,    ) Jury Trial Requested.

15              Defendants.

16

17                     PRELIMINARY REMARKS

18  1. In 1967, Supreme Court Justice William O. Douglas posed the following inquiry:

19      *"… What about the judge who conspires with local law enforcement officers to*

20      *'railroad' a dissenter?  What about the judge who knowingly turns a trial into a*

21      *'kangaroo' court?  Or one who knowingly flouts the Constitution in order to obtain*

22      *a conviction? …"*  [Pierson v. Ray, 386 U.S. 547, 566-67 (1967)].

23  2. Those very issues raised by Justice Douglas over 40 years ago are now surfacing

24      by way of this lawsuit, exposing two such actors while serving as an example to

25

F.1

others who might be intentionally abusing the protected rights of self-represented litigants.

### JURISDICTION AND VENUE

3. This case arises under the Constitution and laws of the United States and presents a federal civil rights question within this court's jurisdiction under 28 U.S.C. section 1331.

4. The court has authority to grant nominal, actual and exemplary damages pursuant to 42 U.S.C. section 1983.

5. This venue is proper under 28 U.S.C. section 1391, in that both defendants reside within this district.

### PARTIES

6. Plaintiff Raymond Robinson is a United States citizen residing in San Diego, CA.

7. Defendant David Rubin is a United States citizen and California state judge residing in San Diego, California. This action is brought against Mr. Rubin in his individual capacity.

8. Defendant Brian Cornell is a United States citizen and a City of San Diego traffic patrolman residing in San Diego, California. This action is brought against Mr. Cornell in his individual capacity.

### STATEMENT OF FACTS

9. On November 15, 2006, Defendant Cornell issued a traffic citation to Plaintiff, thereby accusing Plaintiff of an infraction violation of California law.

10. On February 9, 2007 the State of California conducted a court trial of said accusation.

11. During said trial, Plaintiff was self-represented, Defendant Cornell was the sole government witness, and Defendant Rubin was the judge.

F.2

12. During said trial, when the legal argument of the defendant therein was to begin, Judge Rubin declared that the government's witness, a layperson, would *"wave opening and reserve rebuttal,"* upon which the defendant asked Judge Rubin if the witness was therefore going to be allowed to argue, to which Judge Rubin declared, *"Right. He has first and last but he's not going to go first. He's going to let you go instead and he's going to go last."*

13. Judge Rubin's assignment of the government's witness to argue the law on behalf of the People, as described in paragraph 12 above, was made without overt consultation with said witness and without objection therefrom.

14. Judge Rubin's said assignment of the government's witness to argue the law on behalf of the People, was a ministerial act requiring no discretion.

15. During said trial, at the completion of the defendant's four, specific legal arguments, Judge Rubin said to the government's witness, *"Alright, your rebuttal,"* at which point Mr. Cornell, still without objecting, proceeded to furnish the People's legal argument in opposition to each of the first three of Plaintiff's particular defensive arguments, ignoring the fourth.

16. During said trial, at the conclusion of Mr. Cornell's legal arguments, Judge Rubin pronounced Plaintiff herein guilty while acknowledging upon the record that the arguments of the government's witness had indeed influenced the court's verdict.

## CAUSE OF ACTION

17. Plaintiff incorporates by reference the allegations of paragraphs 3 through 16 above.

18. Defendants conspired to violate Plaintiff's *procedural* due process rights where having a layperson argue the law on behalf of the State and having the judge rely

F.3

1    upon said argument for the court's guilty verdict, thus rendering the underlying

2    proceedings fundamentally unfair.

3    19. Defendants conspired to violate Plaintiff's *substantive* due process rights where,

4    at the urging of the judge, the government's witness got up and started arguing

5    the law on behalf of the People of the State of California, thereby shocking the

6    conscience of a reasonable person.

7    20. Defendants are in violation of 42 U.S.C. section 1983, in that they acted under

8    color of state law to deprive Plaintiff of due process rights protected under, and

9    guaranteed by, Section 1 of the Fourteenth Amendment to the Federal

10    Constitution.

11    21. Defendants are in violation of California Civil Code sections 1708, 1709 and 1710

12    for their deceitful infringement upon Plaintiff's rights as aforesaid.

13                                    REQUEST FOR RELIEF

14    Good cause having been shown, Plaintiff requests the following:

15    22. That both Defendants be found guilty of violating Plaintiff's federally protected

16    constitutional rights;

17    23. That both Defendants be found guilty of violating Plaintiff's California civil rights;

18    24. That the Court recognize Defendant Cornell's violation of California Business and

19    Professions Code section 6126 (a) for arguing the law on behalf of the People of

20    the State of California without being a member of the State Bar, a misdemeanor;

21    25. That the Court recognize both Defendants' violation of California Penal Code

22    section 182 (a)(1) for their conspiracy to have Defendant Cornell represent the

23    People as aforesaid;

24    26. That the Court recognize both Defendants' violation of California Penal Code

25    section 182 (a)(5) for conspiring to pervert or obstruct justice, or the due

F.4

administration of the laws, where Defendant Rubin precipitated Defendant Cornell's representation of the People and then relied thereupon where finding Plaintiff herein guilty;

27. That the Court find the aforesaid conduct of Defendant Rubin as non-judicial, because said Defendant knew he had no jurisdiction whatsoever to assign a layperson to argue the law on behalf of the People, and also because said Defendant had no jurisdiction whatsoever to knowingly participate in a violation of state penal code(s);

28. That Plaintiff be awarded $1.00 in nominal damages;

29. That Plaintiff be awarded $10,000.00 in actual damages;

30. That the Defendants be minimally punished through punitive damages equal to one year's 2007 gross salary from each of said Defendants, respectively, to serve also as an example so that other such actors might be discouraged from trampling upon the rights of future unsuspecting litigants;

30. That Plaintiff be awarded any other or further relief as the Court or Jury may deem appropriate.

## VERIFICATION

I, Raymond Robinson, am the Plaintiff in this action. I personally set forth the allegations of fact in this Complaint, and I hereby declare under penalty of perjury that each of said allegations is true and correct.

Dated:  5-1-08

Raymond Robinson

Plaintiff, in pro per

/////

F.5